IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 10, 2018

**STATE OF TENNESSEE v. MARQUETTE BENSON aka MARQUETTE MUKES**

**Appeal from the Criminal Court for Shelby County**
**No. 16-03588        Chris Craft, Judge**

_____

**No. W2017-01276-CCA-R3-CD**

_____

The Defendant, Marquette Benson, aka Marquette Mukes, was convicted by a Shelby County Criminal Court jury of two counts of convicted felon in possession of a firearm, a Class C felony, based on two different prior felonies. The trial court merged the counts into a single conviction and sentenced the Defendant as a Range II, multiple offender to ten years in the Department of Correction. As best as we can understand the pro se Defendant's brief and numerous supplemental motions he has filed with this court, he argues that the State engaged in prosecutorial misconduct by: redacting a chronology of a 911 call, improperly commenting on the evidence, and presenting false testimony; the trial court prevented him from presenting his defense by barring the admission of a police report; and the trial court exhibited bias by its various evidentiary rulings that favored the prosecution. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Marquette Benson, aka Marquette Mukes, Hartsville, Tennessee, pro se.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Jose Leon, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

This case arises out of the Defendant's March 8, 2014 arrest at his mother's Memphis home for being a convicted felon in possession of a firearm. According to the State's proof at trial, a 911 "armed party" call was made from the home that night. When officers responded, they found two individuals present in the home: the Defendant's frail mother and the intoxicated, belligerent Defendant. After receiving the Defendant's mother's consent to search the home, the officers found an automatic handgun underneath the mattress in the Defendant's bedroom and a spent .40 caliber shell outside the home. The Defendant was arrested and subsequently indicted on two counts of convicted felon in possession of a firearm.

At the Defendant's March 22-24, 2017 trial, the State presented as witnesses the Memphis police officers who responded to the "armed party" call, who related that the intoxicated Defendant bragged about his $200 pair of blue jeans that were hanging in the closet of the bedroom that his mother pointed out as his; the police lieutenant who learned of the Defendant's status as a convicted felon by running his information through the computer system; and a 911 supervisor and keeper of the records, who identified a redacted version of the written record, or "chronology," of the 911 call, which was admitted as an exhibit. The State also introduced as exhibits the death certificate of the Defendant's mother and a stipulation of the parties that the Defendant had prior convictions for aggravated assault and burglary of a building.

The Defendant, testifying on his own behalf, claimed that he lived elsewhere and was only visiting his ill mother at her home, where she lived with her boyfriend/caretaker, the boyfriend's brother, and the Defendant's younger brother. He said his mother's boyfriend and the boyfriend's brother were present with him and his mother in the home when the police responded. He testified he answered the door to the police and was immediately handcuffed and placed in a patrol car. He stated that the bedroom in which the weapon was found was his brother's and speculated that the gun must have belonged to his brother. He denied having ever seen the gun or that he fired or handled a weapon that night. On cross-examination, he acknowledged that he pled guilty to aggravated assault because he beat his mother with a baseball bat, although he claimed that it "was more [his] girlfriend, just a lot of . . . a lot of things going on."

Following deliberations, the jury convicted the Defendant of both counts of the indictment. The trial court subsequently merged the convictions and sentenced the Defendant as a Range II multiple offender to ten years in the Department of Correction.

At the beginning of the sentencing hearing, the Defendant expressed his desire to represent himself and attempted to give the trial court a paper entitled "Notification of Arrest of Judgment: Challenging Statues [sic]." After a lengthy voir dire, the trial court found that the Defendant "d[id] not know what he[] [was] doing" but that he "ha[d] a right to represent himself." The court then denied the Defendant's motion, explaining to the Defendant that he was convicted of violating a state, rather than a federal, statute, and that the court had jurisdiction over the Defendant.

Because the "Notification of Arrest of Judgment" is representative of the style and logic that the Defendant uses in his brief and the numerous motions filed in this court, we have set forth a pertinent portion of it below:

> Rule 5.1. Constitutional Challenge to a Statue [sic] – Notice, certification and intervention.
>
> I Mr. Benson challenges [sic] your magistrate delegation of authority to constitute in writ documentation that this, State Government has the authority to abridge, modify enlarge or adopted [sic] federal cases and statue's [sic] from Article III Federal Courts. 28 U.S.C. §2072
>
> The Constitution of the United States, Article II of amendments, declaring the right of the citizen to bear arms, is a restriction alone upon the United States, and has no application to State Government. . . .
>
> Indictment and Information;
>
> Conviction of "unlawfully carrying a pistol" can-not be sustained, under ordinance carrying into municipal law state law prohibiting carrying of any except army or navy pistol openly in hand.

At the June 2, 2017 motion for new trial hearing, the trial court again attempted to dissuade the Defendant from representing himself, to no avail. The Defendant handed over a new motion that he requested that the trial court file, which he styled as "Motion for Default in Judgment and Reversal of Conviction," and which the trial court treated as his motion for new trial. During the hearing, the Defendant expressed his belief that the arresting officers should not have been allowed to testify at his trial because they did not provide any prior statements "to verify whether their testimony was trustworthy[.]" He also argued that the "911 call" "shouldn't have been tampered with" because it was evidence. Following the trial court's oral denial of his motion for new trial, the

Defendant opted to represent himself on appeal, despite further warnings from the trial court of the danger in doing so. On June 9, 2017, the trial court entered a written order that, among other things, overruled the Defendant's motion for new trial and allowed him to represent himself on appeal. On June 20, 2017, the Defendant filed a timely notice of appeal to this court.

## ANALYSIS

In his "statement of issue presented for review" portion of his brief, the Defendant asserts that the prosecutor violated his right to a fair trial by using "improper methods calculated to produce a wrongful conviction[,]" and that the trial court improperly "interfered in trial proceedings[.]" In his one paragraph argument section, the Defendant asserts, without any details, references to the record, or citation to authorities, that a prosecutor "may not prosecute a defendant for a vindictive reason[,]" "knowingly present false testimony[,]" "use staged testimony to attempt to introduce inadmissible evidence[,]" or "appeal to juror's [sic] to act as a conscience for the community or make remarks likely to inflame the passion of the juror's [sic] to lead to a conviction for a [sic] improper reason." Taken as a whole, the Defendant's chief complaint appears to be that he was not allowed to use the police report and the affidavit of complaint to impeach details of the police officers' testimony.

The State responds by arguing that the Defendant's brief is wholly inadequate, even under the more lenient standards afforded a pro se defendant, and that this court should therefore conclude that his issues are waived. In the alternative, the State argues that the record shows no prosecutorial or judicial misconduct or errors in the trial court's evidentiary rulings.

We agree with the State that the Defendant has waived consideration of his issues for failure to provide an adequate brief. Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure provides in part that a brief shall contain "[a]n argument . . . setting forth . . . the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record. . . relied on[.]" Rule 10 (b) of this court provides that "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b).

As the State points out, the Defendant's brief is difficult to follow and lacking in citation to the record and legal authority. The Defendant appears to use each different section of his brief to throw in additional legal terms that are wholly unrelated to the

assertions made in either the "Issue" or "Argument" sections of his brief. For example, in the "Conclusion" section, the Defendant references his right to a jury that has not been selected in an arbitrary and discriminatory manner and the three prong test for determining proximate cause for a tortfeasor's conduct. Although pro se litigants are afforded more leniency than lawyers, they "'are not . . . entitled to shift the burden of litigating their case to the courts.'" Chiozza v. Chiozza, 315 S.W.3d 482, 487 (Tenn. Ct. App. 2009) (quoting Whitaker v. Whirlpool Corp., 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000)). Accordingly, "[p]ro se litigants must comply with the same substantive and procedural law to which represented parties must adhere." Id. (alteration in original).

In determining that the Defendant has waived consideration of his issues on appeal based on the inadequacy of his brief, we are mindful of the fact that the trial court did its best to persuade the Defendant to accept the assistance of counsel. The trial court also helped the Defendant by scheduling the hearing on the motion for new trial before the deadline for filing had passed and generously treating his "Motion for Default In Judgment and Reversal of Conviction" as a motion for new trial. Given the procedural history of the case, the numerous motions filed by the Defendant before the trial court and this court, and the trial court's generous and liberal treatment of the Defendant's pleadings, we find no reason to suspend the requirements of Rule 27 of the Rules of Appellate Procedure or Rule 10 of the rules of our court.

Our decision to treat the Defendant's issues as waived is made easier by our review of the record, which reveals no errors in the trial court's rulings and absolutely nothing that even approaches prosecutorial or judicial misconduct. The Defendant is, clearly, simply ignorant of the law and unhappy with the fact that the police report was inadmissible hearsay and that the officers were allowed to testify without providing prior written statements to the Defendant. Therefore, even if not waived, the Defendant would not have been successful on any of his issues.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE

- 5 -